

# NUMBER 13-22-00199-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ESTHER J. SWAIN,                                                          Appellant,

v.

BERRY M. DOBBS AND UNITED SERVICES
AUTOMOBILE ASSOCIATION,                                    Appellees.

## On appeal from the 153rd District Court
## of Tarrant County, Texas.

# OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria**
**Opinion by Justice Longoria**

Pro se appellant Esther J. Swain appeals from the trial court's order dismissing her petition for bill of review for lack of prosecution. Esther also appeals from the trial court's orders denying nonattorneys from representing her in court, arguing in four issues, which we reorganize and construe as one, that the trial court erred in ruling that she could not

be represented in court by her selected next friend or an American Disabilities Act Amendments Act (ADAAA) advocate. We affirm.

## I. BACKGROUND[1]

On February 12, 2018, Esther filed a petition for bill of review in the 236th District Court in Tarrant County. The pleading was signed by (1) Esther as "Executrix of [the] Estate of Richard C. Swain and Co-Plaintiff"; (2) Darren B. Swain, Esther's son, as "next friend" of Esther; and (3) Kenn Goldblatt as "ADAAA advocate" for Esther. This pleading referenced a hearing in the 236th District Court conducted on February 9, 2018,[2] regarding Esther's "Motion to Reconsider Dismissal" of her lawsuit for failure to prosecute.[3] According to the pleading, Esther filed her pro se original petition against appellees Berry[4] M. Dobbs and United Services Automobile Association (USAA) on April 17, 2015, and the 236th District Court dismissed the lawsuit on October 16, 2017. Esther's petition for bill of review requested reinstatement of the underlying suit "for full and fair adjudication of the issues."

On February 26, 2018, appellees filed a joint "Motion to Strike Plaintiff's Bill of Review." Appellees averred the following:

> By signing Plaintiffs' Bill of Review as next friend of Esther[], Darren[ ]has

---

[1] This case is before this Court on transfer from the Second Court of Appeals in Fort Worth pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

[2] The reporter's record does not contain a transcript of the February 9, 2018 hearing.

[3] The clerk's record does not contain any court filings preceding Esther's petition for bill of review, such as the original petition in the underlying cause.

[4] Spelled variously as "Berry" and "Barry" in the record.

> engaged in the practice of law. Likewise, by signing Plaintiffs' Bill of Review as ADAAA Advocate for Esther[],[ ]Goldblatt has engaged in the practice of law. Likewise, by signing Plaintiffs' Bill of Review as Executrix of the Estate of Richard C. Swain, Esther[] has engaged in the practice of law.

According to appellees' motion, Esther, Darren, and Goldblatt engaged in the unauthorized practice of law because they were not licensed attorneys or members of the State Bar. Appellees' motion requested that the petition for bill of review be stricken.

On February 28, 2018, appellees filed a joint answer to Esther's petition for bill of review. On the same day, Esther filed her "Objection and Motion to Strike Defendants' Motion to Strike Bill of Review."

On March 2, 2018, the 236th District Court signed its "Order of Recusal," recusing itself from all remaining proceedings in the cause and requesting the Administrative Judge of the Eighth Administrative Judicial Region to assign another court to hear the cause. On March 7, 2018, the Honorable David L. Evans, Presiding Judge of the Eighth Administrative Judicial Region, signed his "Order of Transfer Due to Recusal," transferring the cause to the 153rd District Court.

On May 29, 2018, an amended petition was filed in the bill of review proceeding.[5] The amended petition did not seek reinstatement of the underlying suit, but rather asserted claims against appellees for negligence arising out of an auto accident. On the same day, Goldblatt filed his "Amicus Curiae Brief in Support of [Esther]." On June 7, 2018, Esther filed her "Motion to Proceed with Her Amended Petition, Discovery and Other Matters."[6] On August 28, 2018, the trial court set a hearing on Esther's "Motion to

---

[5] This pleading was also signed by Goldblatt.

[6] This motion was also signed by Darren and Goldblatt.

3

Compel and for Sanctions filed on July 31, 2018," for October 4, 2018.[7]

On September 26, 2018, Dobbs filed his "Motion to Strike to Plaintiff's Amended Petition and Motion to Compel Discovery and for Sanctions," re-urging his prior argument that Esther, Darren, and Goldblatt were engaging in the unauthorized practice of law and requesting the trial court to strike the referred-to motions. On September 27, 2018, Esther filed a response.[8]

On January 9, 2019, the trial court entered its order setting the petition for bill of review for trial for the week of April 8, 2019. On March 20, 2019, Esther filed her "Motion to Continue."[9] On March 27, 2019, the trial court signed its order granting Esther's motion for continuance and resetting the cause for August 19, 2019.

On April 4, 2019, Esther filed her "Motion for Advocate Representation Under the [ADAAA] of 2008."[10] In said motion, Esther requested that the trial court allow her to be represented by her selected ADDAA advocate and next friend "to participate fully in all future proceedings of this Court and for such other and further relief to which she may show herself to be entitled in law and/or in equity." The trial court signed an order setting a hearing on this motion for April 19, 2019. On April 12, 2019, Esther filed her "Notice of Rescheduled Hearing on Plaintiff's Motion for ADAAA Advocacy," which averred that a hearing on her "Motion for ADAAA Advocacy" was re-scheduled for May 16, 2019.[11]

---

[7] The clerk's record does not contain this motion.

[8] This motion was also signed by Goldblatt.

[9] This motion was also signed by Darren and Goldblatt.

[10] This motion was also signed by Darren and Goldblatt.

[11] This motion was also signed by Darren and Goldblatt. The reporter's record does not contain a transcript for a hearing on May 16, 2019. Nothing in the clerk's record establishes that a hearing took place

4

On May 13, 2019, appellees filed their joint "Defendants' Response to Esther['s] Motion for Advocate Representation Under the [ADAAA] of 2008", arguing that Darren and Goldblatt were non-attorneys engaging in the unauthorized practice of law, and were not entitled to file pleadings or participate in court proceedings on Esther's behalf. On the same day, Esther filed[12] a reply to appellees' response, again requesting the trial court to allow her to be represented by Darren as next friend and Goldblatt as an ADAAA advocate "to participate fully in all future proceedings . . . ."[13] The reply stated, in relevant part:

> [Esther] was required by the original trial judge to hire licensed counsel to replace her preferred ADAAA advocate. In the time three (3) licensed attorneys represented her, the[y] failed entirely to perform their duties in her interest, resulting in the dismissal of her case. They then failed and refused to inform her of that dismissal until after the time for appeal had passed. When [Esther] insisted they act to restore the case to the Court's docket, they simply refused to act. As a result, [Esther] turned once again to her ADAAA Advocate who prepared a Bill of Review which was filed by her and, after consideration of the original trial judge, without supporting argument from her Advocate who was not allowed to address the Court [on] her behalf, the Bill was granted[14] and the original trial judge immediately recused himself, sending the case to this Court.

On May 31, 2019, the trial court entered its order denying Darren, as next friend for appellant, authority to practice law as the legal representative of appellant in further court proceedings in the case. On June 3, 2019, the trial court entered its order denying appellant's motion for ADAAA representation. This order stated:

---

on May 16, 2019.

[12] This filing was also signed by Darren and Goldblatt.

[13] Esther's reply stated, among other things, that "Goldblatt prepared pleadings for Plaintiff from the beginning of her original suit in this action."

[14] Nothing in the record before us indicates the 236th District Court granted the bill of review.

> After hearing and argument, the Court determined that because [Esther's] selected ADAAA Advocate is not licensed to practice law in Texas[,] he will not be allowed to represent [Esther] in Court or speak on her behalf in Court and that ADAAA representation is not appropriate for the . . . case.

On August 12, 2019, Esther filed an additional "motion to continue," and she filed an amended "motion to continue" on August 19, 2019. In her amended motion, Esther requested the trial court to "either grant her at least [a] sixty (60) day extension in the scheduling of trial on the merits . . . or allow her preferred Advocate to fully represent her in the trial on the merits." The trial court did not rule on either motion for continuance.

On December 12, 2021, appellees filed their joint "Motion to Dismiss for Lack of Prosecution," which requested the trial court to dismiss Esther's petition for bill of review for lack of prosecution. On February 22, 2022, the trial court set a hearing on the motion to dismiss for March 11, 2022.

On March 10, 2022, Darren signed and filed "Plaintiff's Motion to Retain Case on Docket" as "Plaintiff, Power of Attorney." On the same day, USAA filed its "Motion . . . to Strike Plaintiff's Motion to Retain Case on Docket," arguing that Darren disregarded the trial court's previous order denying him authority to practice law as Esther's legal representative and that he continued to engage in the unauthorized practice of law.

On March 11, 2022, the trial court held a hearing on appellees' motion to dismiss, and the following exchange occurred:

| [The Court]: | This is a motion regarding a DWOP [dismissal for want of prosecution], as we call it, and this is defendants' motion. I'm going to let y'all state your appearances for the record. |

. . . .

[The Court]: And then for plaintiff, who is here?

[Darren]: Yes. My name is Darren Bradley Swain. I am the power of attorney, next friend, and the ADA advocate for [Esther].

[The Court]: Is she alive?

[Darren]: She's alive but very critical condition and unable to—very difficult for her to function.

[The Court]: The answer is yes, she's alive[?]

[Darren]: Yes.

[The Court]: All right. Thank you. And welcome here, [counsel for USAA]. Come on up to the podium and let's hear your argument. I am looking at the file. I've read your motion. And what it seems to me is that this case, which is a 2018 case, so it's four years old, slightly more than four years old, nothing is happening in this case. Yes, we had Covid. This started as a bill of review case and it was transferred. And what I understand is that your client simply is asking this court to either set this thing for trial and get it moving or dismiss it because nobody is doing anything. Is that fair to say?

[Counsel for USAA]: Yes. Primarily the latter, Judge. This relates to an auto accident nine years ago and the original lawsuit was filed back in I think '15 and it was dismissed at that time by Judge Lowe, which precipitated this bill of review which was filed in '18. And you're right, it's now four years old and absolutely nothing, I mean nothing, has been done on the case by the plaintiff. I think the issue here is back in '19 the plaintiff moved to continue a trial setting of the case. That was well before Covid. And plaintiff was—I was not here at the hearing but it's my understanding that [Esther] was told that she was getting a continuance in order to find an attorney. She has not found any attorney to represent her. Instead, we have [Darren], who has tried on multiple occasions to argue on her behalf,

essentially practice law, and you've actually entered two orders saying you can't do that. As an ADAA[A] advocate or as next friend, you're not entitled to practice law. So to the extent [Darren] wants to represent [Esther] today, you've already ruled that he cannot do so. I wanted to remind the Court of that. Essentially, back to the original point, it's been sitting with absolutely nothing happening. Under [Rule ]165a, the Court has the authority to dismiss the case, and given the amount of time that's passed with no action being taken and no trial setting being requested, we ask that the Court dismiss the case.

. . . .

[The Court]: All right. So I don't want [to] recreate the wheel here. What I want to do is help y'all. But at one time there was a man involved in this matter named Mr. Goldblatt. He's been in my court before and takes the position that—I think that might have been my first year on the bench and he came in and was talking about his experience in being a real representative for people even though he's not a lawyer. And I believe the words out of his mouth was, "And, Judge, I've sued judges so watch out." And I always thought that that was one of the most inappropriate things that was ever said to me in my time on the bench and that was in my first year on the bench. I've been here ten years. So anyway, here is the question. The question is—there's two questions that I have in this case. Number one is the issue of can the case move forward without an actual attorney. It can move forward with a pro se. It can move forward with an attorney. But at this present state I don't know that it can move forward. But let's take that aside for just one moment. Why has nothing been done in this case if everyone is eager to prosecute it? Have depositions been taken, [counsel for USAA]?

[Counsel for USAA]: No, Judge. This is a bill of review so there's not much for us to do. It's an attack on Judge Lowe dismissing the case.

8

| [The Court]: | So they would have to show evidence in a bench trial of some sort or hearing or bring a motion to show the very high standard of bill of review of Judge Lowe's [order]. And so no opportunity—I mean, the case was set for trial at one point. I can't tell anyone how to practice law but this matter could be resolved with a hearing. |
|---|---|
| [Counsel for USAA]: | Potentially, although the fact issue could be easily made. And I'm speaking real [sic] really off the cuff on that. |
| [The Court]: | Right. But the point of the matter is that I'm very serious in this post Covid world where we're starting to get jury trials that I shake up all my cases and make them start working very hard again and give them trial settings so, I mean, they really have very little excuse. It was my belief in the past that, whether it's right or wrong, whether the law applies fairly to all situations or not, that under the law, either [Esther] needs to be here arguing for herself pro se or they need to hire a lawyer. That was my position in the past. It is still my position today, okay. If a whole lot of stuff had happened since I made that ruling, if motions had been filed and hearings set and all that, you know, I would still read them and possibly make a ruling even though we have this non[-]attorney situation going on. But nothing has happened. We have no attorney, we have no pro se, and nothing is happening. So I'm going to dismiss this case. |

The trial court subsequently entered its "Order Dismissing the Case for Lack of Prosecution." On the same day, the trial court entered its "Order Granting [USAA's] Motion to Strike Plaintiff's Motion to Retain Case on Docket."

On March 25, 2022, Darren filed a notice of appeal of the trial court's order dismissing the case for lack of prosecution, which was signed by Darren as "next friend for appellant, pro se." On April 4, 2022, an amended notice of appeal was filed and signed

9

by Esther, pro se. This appeal ensued.

## II.   REPRESENTATION OF INDEPENDENT EXECUTOR

We observe that Esther attempted to perfect an appeal in her individual capacity and in her representative capacity as executor of the Estate of Richard C. Swain. The law distinguishes between a person in her individual capacity and the same person in her representative or fiduciary capacity. *See McMahan v. Greenwood*, 108 S.W.3d 467, 487 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (providing that an executor is synonymous with administrator and legal representative); *see generally Elizondo v. Tex. Nat. Res. Conservation Comm'n*, 974 S.W.2d 928, 931 (Tex. App.— Austin 1998, no pet.) (addressing individual versus representative capacity in the context of standing).

"Rule 7 of the Texas Rules of Civil Procedure allows a person to represent himself or herself pro se only to litigate rights on his or her own behalf, not to litigate rights in a representative capacity." *Lorie Bernice Sharpe Trust v. Phung*, 622 S.W.3d 929, 929 (Tex. App.—Austin 2021, no pet.) (citing TEX. R. CIV. P. 7 (providing that "[a]ny party to a suit may appear and prosecute or defend his rights therein, either in person or by an attorney of the court")). An executor of an estate serves as a representative of the estate; therefore, when the executor is a non-lawyer, she is not entitled to represent herself in her capacity as executor. *See Steele v. McDonald*, 202 S.W.3d 929, 928 (Tex. App.— Waco 2006, no pet.) (holding that a non-lawyer cannot appear pro se on behalf of an estate as an independent executor); *see also Estate of Maupin*, No. 13-17-00555-CV, 2019 WL 3331463, *2 (Tex. App.—Corpus Christi–Edinburg July 25, 2019, pet. denied) (mem. op.) (same); *Kaminetzky v. Newman*, No. 01-10-01113-CV, 2011 WL 6938536, at

10

*2 (Tex. App.—Houston [1st Dist.] Dec. 29, 2011, no pet.) (mem. op.) (same).

A notice of appeal filed by a non-attorney in a representative capacity is ineffective. *See Steele*, 202 S.W.3d at 928–29; *see also Elizondo*, 974 S.W.2d at 931 (holding that because appellant did not perfect appeal in representative capacity, appellant was only before court in individual capacity); *Premier Assocs., Inc. v. Louetta Shopping Ctr. Hous., L.P.*, No. 01-12-00369-CV, 2012 WL 4243802, at *1 (Tex. App.—Houston [1st Dist.] Sept. 20, 2012, no pet.) (mem. op.) (per curiam) (notice of appeal filed by corporate representative that is not licensed attorney ineffective). Thus, we hold that Esther's pro se notice of appeal was perfected only as to Esther in her individual capacity, and not in her capacity as executor of the Estate of Richard Swain. *See Steele*, 202 S.W.3d at 928–29. Because Esther in her representative capacity as executor of the Estate is not properly before us, we will not consider any issues challenging the trial court's judgment as it applies to the claims brought by Esther derivatively on behalf of the Estate of Richard Swain.

### III.    DISMISSAL FOR WANT OF PROSECUTION

### A.    Standard of Review & Applicable Law

A petition for bill of review is an independent, equitable action brought by a party to a former action seeking to set aside a judgment no longer appealable or subject to motion for new trial. *Caldwell v. Barnes*, 975 S.W.2d 535, 537 (Tex. 1998). Because it is an equitable remedy, the bill is available only when a party has demonstrated due diligence and shown, through no fault of its own, that no other legal remedy was available. *Id*. at 537–38.

11

A trial court's authority to dismiss for want of prosecution stems from the express authority of Rule 165a of the Texas Rules of Civil Procedure as well as from the court's inherent power to manage its own docket. *Villarreal v. San Antonio Truck & Equip. Co.*, 994 S.W.2d 628, 630 (Tex. 1999); *3V, Inc. v. JTS Enters., Inc.*, 40 S.W.3d 533, 541 (Tex. App.—Houston [14th Dist.] 2000, no pet.). A trial court may dismiss a case when (1) it finds that the case has not been prosecuted with due diligence; (2) the case has not been disposed of within the Texas Supreme Court's time standards; or (3) a party fails to appear at a hearing or trial. *Villarreal*, 994 S.W.2d at 630 (citing TEX. R. CIV. P. 165a(1)– (2)). In determining whether a plaintiff has prosecuted her case with due diligence, the trial court may consider the entire history of the case, including the length of time the case was on file, the amount of activity in the case, the request for a trial setting and the existence of reasonable excuses for delay. *Nawas v. R & S Vending*, 920 S.W.2d 734, 737 (Tex. App.—Houston [1st Dist.] 1996, no writ).

Rule 6 of the Texas Rules of Judicial Administration, promulgated by the Texas Supreme Court, provides that:

> [J]udges of the county in which cases are filed should, so far as reasonably possible, ensure that all cases are brought to trial or final disposition in conformity with the following time standards:
>
> (a) Civil Cases Other Than Family Law.
>
>> (1) Civil Jury Cases. Within 18 months from appearance date.
>>
>> (2) Civil Nonjury Cases. Within 12 months from appearance date.

TEX. R. JUD. ADMIN. 6(a)(1)–(2).

We may reverse a trial court's dismissal of a claim for want of prosecution only if

12

the court clearly abused its discretion. *MacGregor v. Rich*, 941 S.W.2d 74, 75 (Tex. 1997). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). Esther did not request findings of fact or conclusions of law, and the trial court did not specify the standard of dismissal for want of prosecution used. Therefore, we must affirm on the basis of any legal theory supported by the record. *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 252 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (citing *Worford*, 801 S.W.2d at 109).

## B.    Inadequate Briefing

Appellees suggest that Esther's brief[15] is "without a single record citation." Although we liberally construe pro se briefs, we still require pro se litigants to comply with applicable laws and rules of procedure. *See Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005) (per curiam). "Having two sets of rules—a strict set for attorneys and a lenient set for pro se parties—might encourage litigants to discard their valuable right to the advice and assistance of counsel." *Wheeler*, 157 S.W.3d at 444. "Litigants who represent themselves must comply with the applicable procedural rules, or else they would be given an unfair advantage over litigants represented by counsel." *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 185 (Tex. 1978).

Relevant here, Rule 38.1 requires an appellant's brief to "state concisely all issues or points presented for review," to "state concisely and without argument the facts

---

[15] The brief is signed by Esther and by Darren as "Next Friend for Appellant." Appellees have not moved to strike this brief.

13

pertinent to the issues or points presented . . . [and] be supported by record references," and to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(f), (g), (i). "A brief that does not contain citations to appropriate authorities and to the record for a given issue waives that issue." *Guimaraes v. Brann*, 562 S.W.3d 521, 545 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (first citing *Abdelnour v. Mid Nat'l Holdings, Inc.*, 190 S.W.3d 237, 242 (Tex. App.—Houston [1st Dist.] 2006, no pet.); and then citing *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

Esther filed a single brief raising four issues, which we construe as one, arguing that the trial court erred in ruling that she could not be represented in court by her selected next friend or an ADAAA advocate. We observe that each of Esther's issues contain citations to case law. Esther also cites some portions of the reporter's record, such as the trial court's hearing on appellees' motion to dismiss. Consequently, under a liberal reading, we find that Esther's briefing meets the minimum required to present an issue or argument for appellate review. *See* TEX. R. APP. P. 38.1(f), (g), (i); *see also Guimaraes*, 562 S.W.3d at 545.

## C.     Discussion

In her brief, Esther claims that the record demonstrates that her case was prosecuted and provides a chronology of events occurring *before* she filed her petition for bill of review, i.e., proceedings that occurred in the underlying lawsuit.[16] The clerk's

---

[16] We note that this assertion is found in the "summary of the argument" section of Esther's brief, but not the "argument" section. We address it out of an abundance of caution and in our sole discretion.

14

record does not include any pleadings that were filed before Esther's petition for bill of review was filed; thus, her chronology is not supported by the record before us. In addition, events occurring before Esther's petition for bill of review was filed are not relevant to our analysis of whether the trial court erred in dismissing her petition for bill of review for want of prosecution. A bill of review is a separate proceeding from the underlying suit. *Ross v. Nat'l Ctr. for the Emp. of the Disabled*, 197 S.W.3d 795, 798 (Tex. 2006). The order challenged in this appeal dismissed the bill of review proceeding, not the underlying suit. Thus, in this case, the time period relevant to our analysis of whether the case was diligently prosecuted begins on the date Esther's petition for bill of review was filed.

Esther's petition for bill of review was filed on February 12, 2018. Prior to appellees' December 12, 2021 motion to dismiss, the last pleading Esther had filed in the bill of review proceeding was an amended "motion to continue" on August 19, 2019, the same date the trial court had set the bill of review for trial after granting her previous "motion to continue" on March 27, 2019. The record demonstrates a period of inactivity lasting over twenty-seven months between Esther's August 19, 2019 filing and appellees' dismissal motion. Esther does not appear to acknowledge this period of inactivity in her brief, nor does she provide an explanation for this period of inactivity. Based on this history of the case, the trial court could have reasonably found that (1) Esther did not diligently prosecute her bill of review petition, and (2) her petition had not been disposed of within the applicable time standards. *See Villarreal*, 994 S.W.2d at 630; TEX. R. CIV. P. 165a(2); TEX. R. JUD. ADMIN. 6(a)(2).

15

We also observe that Esther did not appear, pro se or represented by an attorney, at the March 11, 2022 hearing on her motion to dismiss—instead, Darren appeared, ostensibly on Esther's behalf, despite the fact that the trial court had already repeatedly ruled that he could not represent Esther. The trial court could have also dismissed Esther's petition for bill of review for want of prosecution on that basis. *See Villarreal*, 994 S.W.2d at 630 (recognizing that a trial court may dismiss under Rule 165a on "failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice").

Having found that the record supports several legal bases for the trial court's order, we hold the trial court did not abuse its discretion in dismissing Esther's petition for bill of review for want of prosecution. *See id.*; *MacGregor*, 941 S.W.2d at 75

## IV.  LEGAL REPRESENTATION BY NON-ATTORNEYS

Finally, Esther argues that the trial court erred by prohibiting Darren and Goldblatt from representing her in court on her behalf. We construe Esther's issue as a challenge to the trial court's 2019 orders denying Darren and Goldblatt permission to represent appellant in court.

The Texas Supreme Court has stated that it

> has inherent power to regulate the practice of law in Texas for the benefit and protection of the justice system and the people as a whole. . . . The authority conveyed to the [Texas Supreme Court] by [Article II, § 1 of the Texas Constitution] includes the regulation of judicial affairs and the direction of the administration of justice in the judicial department. Within this authority is the power to govern the practice of law. The Court's inherent power under Article II, [§ 1] to regulate Texas law practice is assisted by statute, primarily the State Bar Act[, Texas Government Code chapter 81].

*In re Nolo Press/Folk L., Inc.*, 991 S.W.2d 768, 769–70 (Tex. 1999) (orig. proceeding)

16

(footnotes omitted).

The Texas Government Code defines the practice of law as the "preparation of a pleading or other document incident to an action or special proceeding or the management of the action or proceeding on behalf of a client before a judge in court." TEX. GOV'T CODE ANN. § 81.101(a). Generally, a person may not practice law in the state of Texas unless the person is a member of the state bar. *Id.* § 81.102(a). The Texas Supreme Court may promulgate rules allowing others to practice law in Texas, but that power is limited to practice by (1) attorneys licensed in foreign jurisdictions, (2) bona fide law students, and (3) unlicensed graduate students who attend or attended a law school approved by the Texas Supreme Court. *Id.* § 81.102(b). In addition, though an individual may appear in court either in person or by an attorney, TEX. R. CIV. P. 7, "[a] non-lawyer may not . . . represent another party in litigation or on appeal because it constitutes the unauthorized practice of law." *Rodriguez v. Marcus*, 484 S.W.3d 656, 657 (Tex. App.—El Paso, 2016 no pet.).

Texas Rule of Civil Procedure 44 provides that "[m]inors, lunatics, idiots, or persons non compos mentis who have no legal guardian may sue and be represented by 'next friend' . . . ." TEX. R. CIV. P. 44. However, Rule 44 does not vitiate § 81.102 of the Texas Government Code and allow unlicensed persons to practice law through appointment as "next friend." *Jimison ex rel. Parker v. Mann*, 957 S.W.2d 860, 861 (Tex. App.—Amarillo 1997, no writ); *see also McCrimmon v. Taylor*, No. 01-08-00644-CV, 2009 WL 417278, *1 (Tex. App.—Houston [1st. Dist.] Feb. 19, 2009, pet. denied) (mem.op). Esther concedes in her brief that Darren, her chosen "next friend," is a non-attorney, and

17

we find nothing in the record supporting a contrary finding. As a non-lawyer, Darren is prohibited from representing another party in litigation or on appeal, notwithstanding the provisions of Rule 44. *See* TEX. R. CIV. P. 7; TEX. GOV'T CODE ANN. § 81.102(a); *Rodriguez*, 484 S.W.3d at 657; *Mann*, 957 S.W.2d at 861; *see also Taylor*, 2009 WL 417278 at *1. Thus, the trial court did not err in prohibiting Darren from practicing law as a non-attorney representative of Esther.

Esther spends most of her brief arguing that the Americans with Disabilities Act and its subsequent amendments (collectively, ADA) entitle her, as a disabled person, to be represented in court proceedings by Goldblatt, her chosen ADAAA advocate. This appears to be an issue of first impression which has not been addressed by any Texas intermediate appellate court. Esther concedes in her brief that Goldblatt is a non-attorney, and we find nothing in the record supporting a contrary finding.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The United States Supreme Court has held that Title II protects a qualified individual's "fundamental right of access to the courts." *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004). Therefore, the ADA provides an "affirmative obligation to accommodate persons with disabilities in the administration of justice." *Id.* at 533. Although courts must take reasonable measures to remove any barriers to accessibility, "Title II does not require States to employ any and all means to make judicial services accessible to persons with disabilities." *Id.* at 531–32. "It requires only

reasonable modifications that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service." *Id.* at 532.

Esther suggests that the ADA preempts state laws. The Supremacy Clause of the United States Constitution dictates that the "Constitution, and the Laws of the United States" are "the supreme Law of the Land." U.S. CONST. art. VI, cl. 2. When federal law and state law conflict, the inconsistent state law necessarily gives way to the federal law. *See Free v. Bland*, 369 U.S. 663, 666 (1962) ("[A]ny state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.") (cleaned up). Esther cites 42 U.S.C. § 12203, which states the following:

(a) Retaliation

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) Interference, coercion, or intimidation

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(a)–(b). According to Esther, § 12203 permits her to be "'aided or encouraged' by 'any individual' in the exercise of her rights under the statute," and concludes that she is "specifically entitled to be assisted in court directly by her ADAAA Advocate if she chooses to have such assistance." We read no such effect from the language of the cited statute.

19

Esther does not otherwise point to any language in the ADA, or any case law, supporting the argument that the ADA establishes the right of a disabled litigant to have a non-attorney represent her in court in this state or any other, let alone a specific non-attorney representative of her choosing, and we have found none. *See Bedford v. Michigan*, 722 F. App'x 515, 520 (6th Cir. 2018) ("As the state court judge ruled, Michigan law generally prohibits appointment of a nonlawyer to represent a party in state court. Plaintiff points to no authority that would require a court to allow a "disability advocate" to substitute for representation by a lawyer . . . ."). Thus, we find no support for the proposition that the rules and statutory provisions prohibiting non-attorneys from representing parties in ligitiation in Texas are in conflict with or are preempted by the ADA. *See* TEX. R. CIV. P. 7; TEX. GOV'T CODE ANN. § 81.102; *Free*, 369 U.S. at 666. Nor do we find support for the assertion that allowing a non-attorney to represent disabled litigants in Texas courts is a reasonable measure to accommodate disabled litigants in the administration of justice. *See Lane*, 541 U.S. at 531–32. Such an action would enable the unauthorized practice of law, which would undermine and "fundamentally alter" the Texas Supreme Court's "inherent power to regulate the practice of law in Texas for the benefit and protection of the justice system and the people as a whole." *Id*. at 532; *In re Nolo Press*, 991 S.W.2d at 769; *see Rodriguez*, 484 S.W.3d at 657.

As a non-lawyer, Goldblatt is prohibited from representing another party in litigation. *See* TEX. R. CIV. P. 7; TEX. GOV'T CODE ANN. § 81.102(a); *Rodriguez*, 484 S.W.3d at 657. Thus, the trial court did not err in prohibiting Goldblatt from practicing law as the non-attorney representative of Esther.

20

We overrule Esther's sole issue.

## V.   CONCLUSION

We affirm the trial court's order dismissing Esther's petition for bill of review for want of prosecution.

NORA L. LONGORIA
Justice

Delivered and filed on the
16th day of November, 2023.